AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
4/14/25
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MRV___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
04/14/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___GR___ DEPUTY

United States of America,

    Plaintiff,

v.

DENNIS WALLY WOODBURY,

    Defendant

Case No. 2:25-mj-02204-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Pitwalai (Pamela) Meesri, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about April 13, 2025, in the County of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2244(b) | Abusive Sexual Contact within the Special Maritime and Territorial Jurisdiction of the United States |

This criminal complaint is based on these facts:

   *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Pitwalai (Pamela) Meesri
Complainant's signature

Pitwalai (Pamela) Meesri, Task Force Officer
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: April 14, 2025

Judge's signature

Hon. Karen Stevenson, Chief U.S.M.J.
Printed name and title

City and state: Los Angeles, California

AUSA: William Larsen (x0298)

**AFFIDAVIT**

1. I, Pitwalai Pamela Meesri, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of criminal complaint against and arrest warrant for Dennis Wally WOODBURY ("WOODBURY") for a violation of 18 U.S.C. § 2244: Abusive Sexual Contact Within the Special Maritime and Territorial Jurisdiction of the United States.

3. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### II. BACKGROUND OF FBI Task Force Officer Pitwalai Pamela Meesri

4. I, Pitwalai Pamela Meesri, am a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") and am a Los Angeles Police Department ("LAPD") Major Crimes Division Detective. I have been employed as a police officer for LAPD since 2002 and have been an FBI TFO since 2022. I am currently assigned to the Joint Terrorism Task Force ("JTTF") at the Los Angeles International Airport ("LAX") Office of the FBI, where I

1

investigate violations of federal law occurring within the airport environment and involving aircraft. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

### III. SUMMARY OF PROBABLE CAUSE

5. On April 13, 2025, WOODBURY was a passenger on JetBlue Airlines flight 201 that traveled from Fort Lauderdale, Florida ("FLL") to LAX. Before the flight left the gate, WOODBURY engaged in inappropriate conduct with two flight attendants, R.O. and J.C. Both flight attendants were male. As one example, WOODBURY showed R.O. a picture of a dog, and in the picture's background behind the dog was a blurred image depicting two men having sex. WOODBURY then told R.O. that he should go on a cruise with WOODBURY, and later made a hand gesture of a "pumping" action.

6. Just after the meal service, and while the plane was in the air, J.C. collected passengers' meal trays and walked past WOODBURY. WOODBURY used his left hand to slap J.C.'s buttocks and yelled that WOODBURY loved him.

7. Later on the flight, R.O. was in the plane's front galley when WOODBURY entered. WOODBURY pulled down his pants and underwear down exposing the head of his erect penis to R.O. R.O. told WOODBURY that someone could see him and that it was not appropriate. WOODBURY exited the front galley and then

circled back into the front galley. WOODBURY asked for wine. R.O. told WOODBURY he could have a non-alcoholic drink. WOODBURY again pulled his pants and underwear down exposing the head of his erect penis to R.O. R.O. told WOODBURY, "Enough, go back to your seat." WOODBURY returned to his seat.

8. Interviews with both J.C. and R.O. confirmed that neither flight attendant consented to WOODBURY's sexual contact with them. In a post-arrest Mirandized interview, WOODBURY claimed that the two flight attendants had "solicited" him.

### IV. STATEMENT OF PROBABLE CAUSE

9. Based on my investigation as well as my own observations and information shared by LAX Police Officers, I am aware of the following:

**A. Interview of Flight Attendant J.C.**

10. On April 13, 2025, I interviewed JetBlue Flight Attendant J.C. On April 13, 2025, J.C. worked JetBlue Airlines flight 201 that traveled from FLL to LAX. J.C. worked as the flight's Onboard Lead Flight Attendant.

11. During the flight, WOODBURY sat in seat 1D in JetBlue's Mint Class. WOODBURY was served Prosecco sparkling wine during the pre-departure service and during the flight. J.C. added that the flight was delayed by an hour due to mechanical issues which prolonged the flight's pre-departure time. J.C. estimated that WOODBURY finished the contents of an entire bottle of Prosecco, approximately 750 milliliters, within 3 hours. J.C. observed WOODBURY was slurring his words and

rambling. J.C. told Flight Attendant R.O. that WOODBURY could not be served anymore alcohol.

12. J.C. said WOODBURY made flirtatious comments to J.C. When asked what WOODBURY said to him, J.C. responded that WOODBURY told J.C. that he loved him.

13. J.C. said the meal service was ending and WOODBURY had fallen asleep. J.C. believed that WOODBURY needed to eat to help absorb the alcohol he had drank. J.C. woke up WOODBURY and was served a meal. J.C. collected other passengers' meal trays. J.C. walked past WOODBURY while he was holding passengers' meal trays, when WOODBURY used his left hand to slap J.C.'s buttocks and yelled, "I love you."

14. J.C. went to the rear galley to explain the issues occurring with WOODBURY to the rest of the crew. When he returned to the front of the plane, R.O. told J.C. that WOODBURY had exposed himself to him. J.C. had R.O. work the rear of the plane to keep him away from WOODBURY. J.C. issued WOODBURY a JetBlue notice to cease objectionable and illegal behavior and placed it on WOODBURY's lap when WOODBURY was sleeping.

15. WOODBURY slept for most of the remainder of the flight. Upon arrival at LAX, WOODBURY was escorted off the plane by LAX Police Department Police Officers. As J.C. exited the plane WOODBURY yelled to J.C., "This is all your fault because you didn't go to the bathroom with me."

16. J.C. said he did not consent to WOODBURY touching his buttocks.

**B.      Interview of Flight Attendant R.O.**

17.   On April 13, 2025, I interviewed JetBlue Flight Attendant R.O.  On April 13, 2025, R.O. worked on JetBlue flight 201.  R.O. stated that before the flight left the gate, WOODBURY showed R.O. a picture of a dog.  R.O. could see behind the dog was a blurred image of what appeared to be two men having sex.  R.O. responded by saying, "Oh my God."  WOODBURY laughed and said, "I was wondering how long it would take you."  WOODBURY then told R.O. that he should go on a cruise with him.

18.   As the plane left the gate, R.O. conducted the safety briefing.  When R.O. demonstrated how the plane's oxygen masks worked, he saw WOODBURY looking at him and made a hand pumping motion.

19.   As the plane was moving to the runway to take off, WOODBURY went to use the bathroom.  R.O. said he allowed WOODBURY to use the bathroom even though he should not have because the plane was about to take off.  WOODBURY used the bathroom and returned to his seat.

20.   R.O. confirmed that WOODBURY had drank about a full bottle of Prosecco sparkling wine.  WOODBURY had fallen asleep.  J.C. told R.O. that WOODBURY needed to eat something to absorb some of the alcohol he had drank.  J.C. woke up WOODBURY and they served WOODBURY his meal.  R.O. stood in the front galley while J.C. collected passengers' trays and was bringing them up to the front galley.  J.C. walked past WOODBURY when WOODBURY used his hand to slap J.C.'s buttocks.  R.O. said he could hear

5

the slap to J.C.'s buttocks.  WOODBURY then yelled, "I love you."

21.   After WOODBURY touched J.C.'s buttocks, J.C. went to the rear of the plane to explain what was occurring with the rest of the cabin crew.

22.   R.O. remained in the front galley.  WOODBURY went into the front galley and pulled down his pants exposing the head of his erect penis.  R.O. told WOODBURY, "Somebody can watch you.  This is not the place to do that."  WOODBURY left the front galley but then circled back into the front galley.  WOODBURY asked R.O. for wine.  R.O. told WOODBURY he could only have a non-alcoholic drink.

23.   WOODBURY then pulled down his pants a second time exposing the head of his erect penis.  R.O. told WOODBURY, "Enough. Go back to your seat." WOODBURY returned to his seat.

24.   J.C. came back to the front of the plane. R.O. told J.C. what had occurred. J.C. told R.O. to work the rear of the plane.

25.   J.C. said he did not consent to WOODBURY exposing himself to him.

C.   **Interview of Passenger J.M.**

26.   On April 14, 2025, I spoke to J.M., a passenger on JetBlue 201 who sat behind WOODBURY.

27.   WOODBURY sat in the seat in the front right seat aisle side seat and J.M. sat in a single seat behind WOODBURY in the second row.  Morland explained that the Mint class seats were configured in an alternating pattern; one row has two seats and

6

the next row has one seat. Because of the layout, J.M.'s seat was recessed away from the aisle which did not allow her a clear view of the front of the plane.

28. As WOODBURY sat on the plane and other passengers were boarding, WOODBURY saw a girl walking in the aisle. WOODBURY told the girl that she was cute and asked if her parents made her out of lust or love. The girl and the girl's parents ignored WOODBURY and walked past him.

29. During the flight, J.M. observed that WOODBURY was flirtatious toward flight attendant J.C. J.M. explained that WOODBURY asked J.C., "Where is your husband?" J.C. responded that he was working. J.M. at first thought WOODBURY knew J.C. but realized they did not know each other because J.C. was professional and limited his interaction with WOODBURY. J.M. added that when J.C. served WOODBURY something he told J.C., "Oh, I love you!" J.M. believed WOODBURY was seeking attention from J.C.

30. During the flight, J.M. said she had her headphones on half of the time, was working on her laptop computer, and was not paying attention to WOODBURY. J.M. said she did not see WOODBURY slap J.C.'s buttocks.

### D. TFO Arrests WOODBURY and Interview Him

31. Following his arrest, I read WOODBURY his Miranda Rights. As I read WOODBURY his Miranda Rights, WOODBURY interrupted and said he understood his rights and he did not

need them read to him.[1]  I completed reading the rest of his Miranda Rights.  I asked WOODBURY if he wanted to talk to me.  WOODBURY said he did not, but then added that the flight attendant solicited him to go to the bathroom but he told him no.  WOODBURY did not define what soliciting meant to him.

    32.  I placed WOODBURY under arrest for Title 18, United States Code, Section 2244: Abusive Sexual Contact within Maritime and Territorial Jurisdiction of the United States.

## V.  CONCLUSION

    33.  For all of the reasons described above, there is probable cause to believe that Dennis Wally WOODBURY committed a violation of 18 U.S.C. § 2244: Abusive Sexual Contact Within the Maritime and Territorial Jurisdiction.

Attested to by the applicant in
accordance with the requirements of
Fed. R. Crim. P. 4.1 by telephone on
this 14th day of April, 2025.

_____
HONORABLE KAREN STEVENSON
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[1] Through conversations with California Highway Patrol (CHP), I am aware that WOODBURY was previously employed with CHP and was dismissed from state service.

8